IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EDWIN MITCHELL KELLEY and | ) | Case No.  03-62125-ABF |
| DIXIE RAE KELLEY, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| MARVIN TIPTON | ) | Case No. 3:01-cv-5027-JCE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MILL CREEK GRAVEL, INC., | ) | |
| EDWIN MITCHELL KELLEY, and | ) | |
| DIXIE RAE KELLEY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MARVIN TIPTON, | ) | Case No. 3:03-cv-5076-RED |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| EDWIN MITCHELL KELLEY and | ) | |
| DIXIE RAE KELLEY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| EDWIN MITCHELL KELLEY and | ) | Adv. No. 04-6039-ABF |
| DIXIE RAE KELLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| MARVIN TIPTON | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## FACTUAL SUMMARY

There is ongoing litigation before three different judges involving these debtors and Marvin Tipton. In April of 1999 Tipton approached the Kelleys about the prospect of mining rock and gravel on their property.  They entered into a preincorporation agreement to form Mill Creek Gravel, Inc. (Mill Creek) to mine gravel on 135 acres of real estate owned by Kelley. Under the preincorporation agreement, Tipton was to operate the mine and obtain the appropriate licenses and permits. Mill Creek borrowed $530,052 from the Community Bank of Arkansas to purchase the necessary equipment, which secured the note. Both Tipton and Kelley also guaranteed the note and pledged their stock in Mill Creek as additional collateral. In addition, the Kelleys apparently granted the bank a Deed of Trust on all or a portion of their real estate. Mill Creek agreed to pay the Kelleys $.50 per cubic yard of gravel or rock mined from their land (the Excavation Royalty Agreement).

In December of 1999 Mill Creek was incorporated by the State of Missouri with Tipton registered as a 49 percent shareholder and Kelley as a 51 percent shareholder. During 2000, Tipton oversaw the construction of an access road to the mine, prepared the mining area, and set up the equipment. In January of 2001, however, Kelley denied Tipton access to the property.

On March 15, 2001, Tipton filed a suit, on behalf of himself and Mill Creek, in the United States District Court for the Western District of Missouri, seeking damages for

2

breach of contract, breach of fiduciary duty, fraudulent misrepresentation, quantum meruit, and services performed.  That suit was assigned to Magistrate Judge James C. England. The Kelleys filed a counterclaim alleging, in part, that Tipton represented himself to be knowledgeable and experienced in mining, when he was not. The Kelleys claim that by November of 2000, Tipton had spent all of the proceeds of the operating loan and only mined 80 tons of gravel.  Moreover, the Kelleys alleged that Tipton was unwilling to contribute any equipment to the operation, and that Tipton had not accomplished the transfer of mining permits.

In June of 2001, while the lawsuit was pending, Tipton contends that the Kelleys purchased and took assignment of the note with the Community Bank of Arkansas, including his guaranty and stock pledge. The Kelleys purchased the position of the bank, and released the Deed of Trust as to their real estate. In August of 2002, the Kelleys sold almost all of the equipment owned by Mill Creek, allegedly without notice to Tipton. The proceeds of that sale were apparently used to reduce Mill Creek's obligation to the Kelleys.

On May 15, 2003, the jury found that the Kelleys breached the Excavation Royalty Agreement and rendered a verdict in favor of Mill Creek in the amount of $1.5 million. The jury also found in favor of Tipton on the Kelleys' counterclaim for fraudulent misrepresentation.

On May 16, 2003, the Kelleys made demand on Tipton for repayment of the Mill Creek loan obligation. On June 4, 2003, the Kelleys notified Tipton that they were preparing

to dispose of his 49 percent share in Mill Creek in partial satisfaction of his guaranty on the note. On June 20, 2003, Tipton filed a Complaint in the United States District Court for the Western District of Missouri, which was assigned to the Honorable Richard E. Dorr. In his Complaint Tipton sought a determination that he was released from his guaranty and that the threat to dispose of his stock caused him monetary damage. He also sought a temporary restraining order (the TRO) to prevent the Kelleys from disposing of his 49 percent interest in Mill Creek. On June 25, 2003, Judge Dorr granted the TRO and ordered Tipton to post a bond in the amount of $15,000. On July 1, 2003, Tipton posted the bond and on August 15, 2003, the Kelleys filed this Chapter 11 bankruptcy proceeding. The TRO is still in effect. No further action has been taken in this lawsuit due to the automatic stay imposed by the bankruptcy filing.

On May 23, 2003, Tipton asked Judge England to assess attorney's fees against the Kelleys. The court denied that request, but did order attorneys fees in the amount of $91,192.46 to be assessed against Mill Creek. The court also awarded Tipton his Bill of Costs in the amount of $14,239.11. That award was assessed against the Kelleys.

The Kelleys appealed the judgment to the Eighth Circuit Court of Appeals. On June 28, 2004, the Eighth Circuit affirmed in part, vacated in part and remanded the case. The Eighth Circuit found that "the evidence was insufficient for a reasonable jury to find that Mill Creek–a corporation that was $700,000 in debt, had sold almost none of its product, and had a product that many purchasers were not interested in buying– was 'reasonably

certain' to make a profit."[1] Thus, the court vacated the damages portion of the judgment. The court did, however, find that the evidence suggested "some smaller amount of actual damage to the corporation, such as the Kelley's sale of corporation equipment for their own personal benefit, sale of land that the corporation intended to mine, and the small sales of gravel from the eighty-ton pile that were not remitted to the corporation." In addition, the court found that Mill Creek "may be entitled to recover the loss it incurred to get its gravel operation up and running in reliance on the preincorporation agreement."[2] As a result of its findings, the Eighth Circuit remanded the case for a " new trial on damages to calculate the amount due to the corporation without consideration of lost profits."[3]

As to the attorney's fees and costs, the Eighth Circuit affirmed the District Court's finding that attorney's fees can be assessed against the corporation in a shareholder's derivative suit, but concluded that "no attorney fees or costs should be awarded for the time and expenses spent on Tipton's lost profit claim."[4] Thus, the Eighth Circuit vacated the District Court's decision in regard to lost profits, attorney's fees, and costs, and remanded for a new trial.[5] Tipton petitioned for a rehearing, and on August 18, 2004, that request was

---

[1] *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 921 (8th Cir. June 28, 2004).

[2] *Id.*

[3] *Id.* at 920.

[4] *Id.* at 923.

[5] *Id.*

5

denied.

In the meantime, the Kelleys' Chapter 11 bankruptcy case was proceeding. The Court established January 29, 2004, as the last date to file a proof of claim. On January 21, 2004, Tipton filed a proof of claim, allegedly secured by a judgment lien, in the amount of $812,915.86. Counsel for Mill Creek filed a proof of claim on that same date for a judgment debt in the amount of $1,642,275.50. These amounts are based on the judgment in the case before Judge England. The Kelleys objected to both of these claims, and that issue is still pending before the Bankruptcy Court. On February 16, 2004, the Kelleys proposed a Plan for confirmation. Tipton objected to the Plan, and filed a motion to dismiss. On June 9, 2004, the Kelleys filed an adversary proceeding to clarify both the amount and the treatment of any claim either Tipton or Mill Creek has against them personally. The Kelleys allege that Tipton misrepresented to the sheriff of McDonald County that he held a judgment against the Kelleys when, in fact, the judgment was in favor of Mill Creek. As a result of this alleged misrepresentation, the sheriff executed on personal property of the Kelleys including $8,348.85 in checking accounts, a John Deere road grader and a John Deere tractor. The Kelleys also object to the proofs of claim filed by Tipton and Mill Creek, contending that Tipton is not a judgment creditor and not entitled to any interest, and that Mill Creek is only entitled to interest at the rate of 1.18 percent per annum. The Kelleys ask that any claim Tipton might have as a shareholder of Mill Creek be equitably subordinated to the claims of other unsecured creditors in this case because his

representation to the sheriff precipitated the allegedly wrongful execution and this bankruptcy proceeding. They also seek a judicial dissolution of Mill Creek.[6] The Kelleys argue that the claim of Mill Creek be calculated as follows: (a) the balance owed to Mill Creek for damages pursuant to the remand decision; plus (b) interest at the rate of 1.18 percent, pursuant to 28 U.S.C. § 1961; minus (c) the sum of $248,465.90, which the Kelleys loaned to Mill Creek; minus (d) any sum for which Tipton is liable on his personal guaranty;[7] minus (e) the allowed attorney's fees Tipton expended in bringing the suit; plus (f) the costs assessed against the Kelleys in favor of Mill Creek. The Kelleys, thus, ask this Court to judicially dissolve Mill Creek and liquidate it in accordance with the respective shareholder percentages once the respective amounts due among the Kelleys, Mill Creek, and Tipton have been determined.[8]

On August 20, 2004, the Kelleys filed a motion in the District Court asking Judge Dorr to refer the issues before him, as well as those before Judge England, to this Court.

## DISCUSSION

---

[6]The alleged wrongful execution occurred post judgment, therefore, it was not an issue raised in the jury trial. The lawsuit that was tried before Judge England did not contain a count for judicial dissolution.

[7]Given that the guaranty, if valid, would be owed by Tipton to the Kelleys, and not Mill Creek, it would appear that the value of such guaranty, if any, should be deducted after the amounts due to Tipton and the Kelleys from Mill Creek have been determined.

[8]I note that Tipton contends this Court does not have authority to dissolve Mill Creek since it is not in bankruptcy. Assuming, as it appears, that the only remaining assets of Mill Creek consist of the potential claims against the Kelleys and Tipton, resolution of the amounts due Kelley, Tipton, and Mill Creek will resolve the issues that would be determined in a state court dissolution.

Where a debtor has matters pending before the district court at the time he files for bankruptcy relief, those matters are automatically referred to the bankruptcy court for disposition:

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.[9]

By order dated August 15, 1984, the United States District Court for the Western District of Missouri (en banc) directed that "all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district."[10] Thus, as to the lawsuit before Judge Dorr, that suit was referred to this Court, by operation of law, on August 15, 2003, when the bankruptcy case was filed. As to the case before Judge England, which was pending in the Eighth Circuit when the Kelleys filed this bankruptcy case, the reference occurred once the Eighth Circuit had ruled, and the case was remanded to Judge England.

Once the district court refers a nonbankruptcy proceeding to the bankruptcy court, that court must determine whether it is authorized to hear and determine all issues raised in the proceeding. That hinges, in the first instance, on whether the proceeding is core or noncore.

---

[9]28 U.S.C. § 157(a).

[10]Order Regarding Reference of Bankruptcy Matters to United States Bankruptcy Judges, dated August 15, 1984.

8

Bankruptcy judges have jurisdiction over bankruptcy cases (such as the Chapter 11 case filed by the Kelleys), as well as all core proceedings that arise in or are related to the bankruptcy case:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate judgments, subject to review under section 158 of this title.[11]

The statute goes on to define core proceedings as relevant to the issues here as follows:

> (2) Core proceedings include, but are not limited to–
>
> . . .
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 . . . .
>
> (C) counterclaims by the estate against persons filing claims against the estate;
>
> . . .
>
> (E) orders to turn over property of the estate;
>
> . . .
>
> (K) determinations of the validity, extent, and priority of liens.[12]

---

[11]28 U.S.C. § 157(b)(1).

[12]28 U.S.C. § 157(b)(2)(B), (C), (E), and (K).

9

The bankruptcy court is obligated to determine whether a proceeding is a core proceeding.[13]

Tipton filed a lawsuit in District Court asking Judge Dorr to find that he has been released from his guaranty of a promissory note now held by the Kelleys, and also to award him damages for the harm he sustained when the Kelleys threatened to sell his stock in Mill Creek. These issues are core as they will have an impact on the Kelleys' bankruptcy estate.

As to the proceeding before Judge England, the jury has already found that the Kelleys are liable for harm done to Mill Creek. The Eighth Circuit remanded, however, for a new trial on the issue of damages. That trial would determine the amount of the claim Mill Creek and Tipton have against the Kelleys' bankruptcy estate. The Kelleys have proposed a Plan, which this Court is confirming by separate order, that proposes to pay the claims of Mill Creek and Tipton, once the amount of their claims is determined. Thus, the issue before Judge England is also a core proceeding over which this Court has jurisdiction.

The issue before Judge England, however, is complicated by the fact that the first proceeding was tried to a jury, and Tipton has reasserted his jury trial right in the remanded proceeding. Moreover, counsel for Tipton represented at the hearing that Tipton does not consent to this Court conducting a jury trial.

The Kelleys argue that Tipton and Mill Creek waived their jury trial right when they filed a proof of claim in this Court. Many courts have held that once a party makes a claim

---

[13]*Official Committee of Unsecured Creditors v. Blease (Envisionet Computer Serv., Inc.)*, 276 B.R. 7, 11 (D. Me. 2002).

on the estate, said party "has submitted to the process of allowance or disallowance of claims adjudicable by the bankruptcy court."[14] In other words, a party waives his right to a jury trial when he files a proof of claim. This case is unusual, however, because at the time the proofs of claim were filed, there was a live jury verdict, the enforceability of which had not been stayed pursuant to Rule 8 of the Federal Rules of Appellate Procedure. The proofs of claim were based on that jury verdict. While I found no cases that specifically addressed the Seventh Amendment jury trial right of a claimant in a bankruptcy case when the original judgment was vacated and the case remanded for a new trial on damages, I did find cases that dealt with waiver of a jury trial right in general. In *United States v. Lee*,[15] a defendant was convicted before a United States Magistrate after waiving his right to a jury trial. The conviction was reversed on appeal and on remand the defendant sought to rescind the waiver. The magistrate denied defendant's motion to withdraw his waiver of jury trial. On appeal from his second conviction, the Sixth Circuit held that the defendant's waiver of jury trial was not effective as to the second trial. The Court stated as follows:

> The stipulation to waive a jury, and to try the case before the court, only had relation to the first trial. <u>There could be no presumption then that there would ever be a second trial; and therefore it should not be presumed that the parties, in making the stipulation, had in mind any possible subsequent trial</u>

---

[14]*Envisionet Computer Serv., Inc.*, 276 B.R. at 10 (citing *Langenkamp v. Culp*, 498 U.S. 42, 43-45, 111 S. Ct. 330, 331, 112 L. Ed. 2d 343 (1990); *Granfinanciera, S.A.* v. Norberg, 492 U.S. 33, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989)).

[15]539 F.2d 606 (6th Cir. 1976).

<u>after the first, to which the stipulation could refer.</u> The right of trial by jury in cases at law, whether in a civil or criminal case, is a high and sacred constitutional right in Anglo-Saxon jurisprudence, and is expressly guarantied by the United States Constitution. [16]

Likewise, in this case, at the time Tipton and Mill Creek filed their proofs of claim, and arguably waived any jury trial right to adjudicate that claim, they had no idea that the judgment would be vacated and the matter remanded for a second trial on the issue of damages. Since the amount sought in the proofs of claim was based on that jury verdict, the mere filing of those claims should not serve as a basis for waiving the jury trial right in a retrial after remand.

In *Oiness v. Walgreen Company*,[17] the determination of damages in a patent infringement suit was vacated and the matter was remanded. The magistrate judge held that this matter could not be determined on a motion for summary judgment, as the defendants had a guaranteed right to a jury trial on the issue of damages. The district court affirmed, holding that the plaintiffs were attempting to circumvent a jury retrial on damages when the law is this area directs that a court may not unilaterally determine the damage issue.[18]

It is a very close call as to whether this Court has jurisdiction to litigate the issue of damages in this remanded proceeding. Given that Tipton and Mill Creek asserted their jury trial right initially, and given that the courts hold there is a jury trial right for a determination

---

[16]*Id.* at 608 (emphasis added).

[17]838 F. Supp. 1420 (D. Colo. 1993).

[18]*Id. at 1421.*

of damages on remand, I am reluctant to find that they waived their jury trial right when they filed proofs of claim based upon a jury verdict that was later reversed.

Bankruptcy courts may abstain from hearing a matter that is related to a bankruptcy case in the interest of justice:

> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[19]

The result of abstention is that the referred proceeding is sent bact to the court before which it was pending. I find that the interest of justice is best served by allowing Tipton and Mill Creek to assert their jury trial right as to the issue remanded by the Eighth Circuit, namely the calculation of the amount due to the corporation from the Kelleys for breach of contract without consideration of lost profits. I further find that the interest of justice is best served by having Judge England determine the remanded issues related to attorney's fees and costs. I will, therefore, enter an order abstaining as to the matter pending before Judge England only.

Separate orders will be issued confirming the Chapter 11 Plan in Case Number 03 62125-ABF, determining that Case Number Case 3:03-cv-5076-RED is a core proceeding, and abstaining in Case Number 3:01-cv-5027 JCE.

---

[19]28 U.S.C. § 1334(c)(1).

<u>/s/ Arthur B. Federman</u>
Bankruptcy Judge

Date: September 17, 2004

RAYMOND PLASTER TO SERVE PARTIES NOT RECEIVING ELECTRONIC NOTICE